UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ACCESS 4 ALL, a Florida not-for-profit
corporation, FELIX ESPOSITO, individually,

    Plaintiffs,

v.                                                    Case No. 5:04-cv-75-Oc-GRJ

OAK SPRING, INC., a Florida profit company
d/b/a Howard Johnson,

    Defendant.
_____

**<u>ORDER</u>**

Pending before the Court is Defendant's Motion for Summary Judgment Against Access 4 All, Inc. and Felix Esposito. (Doc. 25.) Plaintiffs have filed a responsive brief in opposition to Defendant's Motion (Doc. 38),[1] and the matter is now ripe for decision.[2] For the reasons discussed below, the Court concludes that Defendant's Motion is due to be **GRANTED**.

Also currently before the Court are Defendant's Motion to Strike and/or Exclude Plaintiff's Expert Witness Report of Kenneth B. Wynn (Doc. 39) and Defendant's Motion to Strike and/or Exclude Portions of Plaintiff's Response to Defendant's Motion for

---

[1] Plaintiff's responsive brief totals approximately 35 pages in length, in contravention of Local Rule 3.01(c), which disallows the filing of any brief in excess of twenty (20) pages in length absent prior permission of the Court. Although Plaintiff's arguments could have been stated within the space provided by the twenty page limitation, the Court will nonetheless consider Plaintiff's brief in its entirety.

[2] On December 16, 2004, the parties filed their written consent (Doc. 21) to have the Magistrate Judge conduct any and all proceedings in this case, including the trial and entry of a final judgment. Subsequently, the District Court entered an Endorsed Order (Doc. 22) approving the parties consent to the Magistrate Judge's jurisdiction. Accordingly, the undersigned has jurisdiction to enter orders on dispositive motions in this case and enter a final judgment.

Summary Judgment Relating to Settlement (Doc. 40), to which Plaintiffs have filed Responses to both Motions.

With regard to Plaintiffs' statements regarding settlement negotiations, because the Court has relied on none of those statements in reaching its decision in this matter, the Motion to Strike (Doc. 40) those statements is moot. With regard to Defendants' request to exclude the expert report of Kenneth B. Wynn, Plaintiff concedes that the expert report of Kenneth B. Wynn (Doc. 38, Ex. 3) should be stricken because the inspection of Defendant's property occurred long after the time in which discovery was permitted and because the expert, Kenneth B. Wynn, was never disclosed to Defendant prior to the filing of the report. Accordingly, for these reasons and as further discussed herein, Defendant's Motion to Strike (Doc. 39) is due to be **GRANTED**, and the expert report of Kenneth B. Wynn (Doc. 38, Ex. 3) is stricken from the record.

## I. BACKGROUND & FACTS

### A. Procedural Posture

On February 24, 2004, Plaintiffs Felix Esposito ("Mr. Esposito") and Access 4 All, Inc. ("Access") filed their Complaint (Doc.1), seeking injunctive relief, for disability discrimination, claiming that the Defendant violated Title III of the Americans with Disabilities Act ("ADA").[3] On February 28, 2005, Defendant filed its Motion for Summary Judgment. (Doc. 25.) In support thereof, Defendant submitted the deposition of Mr. Esposito (Doc. 26), as well as the affidavits of five of Defendant's employees. (Docs. 29-33.) After receiving an extension of time to respond to the Motion, Plaintiffs filed

---

[3] 42 U.S.C. § 12181 *et seq.*

their Responsive Brief on April 4, 2005. (Doc. 38.) In opposition to Defendant's Motion, Plaintiffs filed portions of the deposition of Mr. Esposito (Doc. 38, Ex. 1), which already had been filed in its entirety by Defendant, as well as three expert reports (Doc. 38, Ex. 2-4), including the report of Kenneth B. Wynn - which as mentioned above has been stricken because the Plaintiffs failed to disclose the report of Mr. Wynn prior to the filing of the motion for summary judgment.

Defendants argue that Plaintiffs lack standing to bring this action because Plaintiffs have failed to allege a sufficient threat of future injury and have brought this suit only to benefit third parties, not themselves. Alternatively, Defendant argues that Plaintiffs have failed to provide evidence of any discrimination they experienced prior to the filing of this case and cannot complain of any discrimination experienced subsequent to the filing of this action.

In response, Plaintiffs assert that they have provided sufficient evidence to show an injury in fact that would be redressed by an injunction and, therefore, they have standing. Additionally, Plaintiffs contend that they did experience discrimination before filing this complaint, notably in the form of architectural barriers to the Plaintiffs' use of the guest bedroom and bathroom.

## B. General Factual Background

Defendant is a corporation doing business as a Howard Johnson Inn ("Howard Johnson"), located in Ocala, Marion County, Florida.[4] The Howard Johnson was built in

---

[4] Doc. 32, pg. 1, Affidavit of Navroz F. Saju.

approximately 1962 and has been operated by Navroz Saju since January 1994.[5] Three of the Howard Johnson's guest rooms, numbers 308, 309, and 310, have been specially outfitted for the use of those with disabilities.[6] Since 1994, the hotel has had a plan in place to accommodate individuals with disabilities and make its facilities accessible to such people.[7]

The individual Plaintiff, Mr. Esposito, lives in Broward County, Florida.[8] Mr. Esposito has a neuropsychological disorder, which causes limitations in his abilities to walk, stand, and drive.[9] As a result of his condition, Mr. Esposito has relied on a wheelchair for mobility since 1982.[10] Mr. Esposito receives social security benefits and a "non-service-connected pension" from the U.S. Navy, apparently his only sources of income.[11] Yet, during the past several years, Mr. Esposito has filed approximately one-hundred federal lawsuits,[12] mostly against hotels, including approximately forty in the Middle District of Florida alone, claiming discrimination based on disability in violation of the ADA.[13] Mr. Esposito travels to hotels in order to act as a self-described spy for all

---

[5] Id.

[6] Id. at pg. 3.

[7] Id. at pg. 1-3.

[8] Doc. 26, pg. 6, 10, Deposition of Felix Esposito.

[9] Id. at pg. 6.

[10] Id.

[11] Id. at pg. 9.

[12] The Court takes judicial notice of the dockets of the district courts where Mr. Esposito has filed disability discrimination lawsuits. See F.R.E. 201(b).

[13] Doc. 26, pg. 13-14.

Case 5:04-cv-00075-GRJ   Document 43   Filed 05/20/05   Page 5 of 19 PageID 359

disabled people, seeks out violations of the ADA, and then files federal lawsuits against the hotels.[14] His purpose in filing these lawsuits is to help other disabled persons by acting as a kind of private attorney general and eliminating any potentially discriminatory barriers at the hotels. In these lawsuits, including this one, Mr. Esposito pays his attorneys no fees and makes no fee arrangements.[15]

In virtually every lawsuit filed by Mr. Esposito, including this one, Access has been his co-plaintiff. Mr. Esposito described Access as an adversary organization of which he is a member,[16] which helps the handicapped financially and, apparently, by joining them in adversarial proceedings.[17]

## C. Facts Specific to this Lawsuit

On November 5, 2003, Mr. Esposito drove to Ocala from Broward County with his traveling companion Richard Wirshi, who is an employee of Accessibility, another company with whom Mr. Esposito is associated and which provides goods and services to physically disabled people.[18] They drove along interstate 75 in order to select a hotel

---

[14] Doc. 30, pg 2-3, Affidavit of Mark Bass; Doc. 33, pg. 1, Affidavit of Cathy Karcaaltincaba; Doc. 29, pg. 2, Affidavit of Shanna Mae Thompson.

[15] Doc. 26, pg. 19.

[16] The records of the Florida Department of State, Division of Corporations (available on the internet at http://www.sunbiz.org), which the Court takes judicial notice of, reflect that Mr. Esposito is also an officer and director of Access.

[17] Id. at 17-18. On cross-examination at Mr. Esposito's deposition, Plaintiffs' counsel suggested, and Mr. Esposito agreed, that Mr. Esposito had mistakenly, throughout his deposition (see Id. at 17, 38, 93), described Access's purposes as adversary, rather than advocacy. In viewing the evidence as a whole, the Court finds that adversary is the more apt description, given the sheer number of adversarial proceedings that Access files.

[18] Id. at 16-17, 22, 24-25.

and at that time chose the Howard Johnson's based on its name.[19]  Mr. Esposito decided to stop at that particular hotel because he wanted to go to the Silver Springs theme park to find out if he was able to get into the glass bottom boats there and because he had an aunt who lived in a neighboring county.[20]

Mr. Esposito and his companion arrived at the Howard Johnson for their one-night stay at 10:20 p.m on November 5, 2003.[21]  Mr. Esposito stayed in room 315, which is not one of the hotel's three designated and specially equipped disabled rooms, those being rooms 308, 309, and 310.[22]  Mr. Esposito never complained about his room to any employees, nor did he request that he be given a disabled room at the hotel, despite inquiries from hotel staff as to whether he needed assistance with anything.[23]  Before bringing this suit, Mr. Esposito never stayed in one of the hotel's rooms that was

---

[19] Id. at 22.  Mr. Esposito states that he believes he had made a reservation at the Howard Johnson.  However, there is no evidence to support the fact that Mr. Esposito had a reservation or made any advance plans.  Mr. Esposito testified that he was simply driving along the road in search of a hotel and chose the Howard Johnson from a multitude of options, which he would not have had to do had he made an advance reservation.  Additionally, the business records of the hotel do not disclose that any reservation was made by Mr. Esposito.  See Doc. 31, pg. 2, Affidavit of Jason Buncie; Doc. 29, pg. 2.

[20] Doc. 26, pg. 22.  There is no evidence that Mr. Esposito actually visited his aunt during this trip, and she has since passed away.  Id. at 76.

[21] Id.  Initially, at his deposition, Mr. Esposito asserted that he checked in during the afternoon. (see Doc. 26, pg. 28.) However, after viewing the hotel's business record of his stay there, Mr. Esposito admitted that he had not arrived until 10:20 at night.  See also Doc. 30, pg. 2; Doc. 31, pg. 2.

[22] Doc. 26, pg. 96; Doc. 32, pg. 3; Doc. 30, pg. 2.  Although, Mr. Esposito originally testified that he stayed in room 308 (Doc. 26, pg. 29-30), he then stated that it was room 310. (id. at 88.) Only after being confronted with the receipt from his stay did he admit that he actually stayed in room 315.  Id. at 96.

[23] Doc. 26, pg. 96-97; Doc. 30, pg. 2-3; Doc. 31, pg. 1; Doc. 29, pg. 2.  Mr. Esposito asserted at his deposition that he requested a handicap room, though he gives no indication of who he made the request to, and he explicitly states that he did not speak to a manager about it.  Doc. 26, pg 96-96. Accordingly, there is no evidence whatsoever supporting Mr. Esposito's claim that he requested a disabled room.

6

equipped for the use of disabled individuals.[24]  Mr. Esposito checked out of the hotel on the morning of November 6, 2003, spent the night driving around, and on November 7, 2003, stayed in Wildwood, which is only about a 40 minute drive away from the Ocala Howard Johnson Hotel involved in this suit.[25]

While at the Howard Johnson, Mr. Esposito claims to have found it inaccessible for his use as a disabled person.[26]  Specifically, Mr. Esposito claims that he was unable to use the bathroom, including the shower and the commode, in his guest room.[27]  However, he also admitted that all of the problems with the bathroom could be due to the fact that he did not stay in a handicap designated room.[28]  Mr. Esposito also identified potential ADA violations in the hotel's parking lot, but testified that he was not personally affected by any of the alleged defects in the parking lot.[29]

## II.  DISCUSSION

### A.  *Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue

---

[24] Mr. Esposito did return to the Howard Johnson, on November 8, 2004, when he had his deposition taken in this case, despite his claims that it discriminated against him.  At that time, he stayed in room 308, one of the disabled rooms.  However, his Complaint did not include any claims relating to his experiences on that trip, nor could it have, and Plaintiff cannot properly allege any new violations relating to that second trip at this late stage of the case.

[25] Doc. 26, pg. 23, 28.

[26] Id. at 23.

[27] Id. at 66-68.

[28] Id. at 100.

[29] Id. at 63-66.

7

as to any material fact and that the moving party is entitled to a judgment as a matter of law." In *Celotex Corp. v. Catrett*, the Supreme Court recognized that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[30] The moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."[31] The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.[32]

## B. Plaintiffs Lack Standing

"[S]tanding is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims."[33] The issue of standing is whether a party is entitled to bring its claims before the Court.[34] The extent of standing is limited by "both constitutional limitations on federal-court jurisdiction and prudential limitations

---

[30] 477 U.S. 317, 322 (1986).

[31] Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987).

[32] Celotex, 477 U.S. at 324.

[33] Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005).

[34] Warth v. Seldin, 422 U.S. 490, 498 (1975).

on its exercise."[35]  Because standing emanates from the Article III case or controversy requirement, it necessarily "implicates our subject matter jurisdiction."[36]

The Article III constitutional prong of standing requires that a plaintiff show that: "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[37]  The requirements of Article III necessitate that "the plaintiff who seeks to invoke judicial power stand[s] to profit in some personal interest" from the relief requested from the Court."[38]  Additionally, plaintiffs seeking injunctive relief, "because injunctions regulate future conduct," have standing "only if the [plaintiffs allege] a real and immediate - as opposed to a merely conjectural or hypothetical - threat of *future* injury."[39]

When the plaintiff is an association it will have standing to sue on behalf of its members "when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim

---

[35] Id.

[36] Bochese, 405 F.3d at 974.

[37] Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 180-81 (2000).

[38] Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 39 (1976).

[39] Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001).

asserted nor the relief requested requires the participation of individual members in the lawsuit."[40]

Although standing may be shown at the motion to dismiss stage by simply providing "general factual allegations of injury resulting from the defendant's conduct," "when, as here, standing is raised at the summary judgment stage, the plaintiff can no longer rest on mere allegations."[41] "The plaintiff has the burden to 'clearly and specifically set forth facts sufficient to satisfy [] Art. III standing requirements.'"[42]

Turning to the facts of the instant case, the Court finds that Plaintiffs have failed to show that they have standing to seek the requested injunctive relief from Defendant. Plaintiffs have not alleged a real and immediate threat of future injury, which would be redressed through an injunction. Other than Mr. Esposito's bald assertion that he plans to return to the Howard Johnson, Plaintiffs have presented no evidence of a threat of future injury, and, in fact, the record evidence establishes that the possibility of future injury is speculative at best.

In considering the issue of standing, the Court finds persuasive the reasoning and conclusions of the court in *Brother v. Tiger Partner, LLC*.[43] In *Tiger Partner*, the Court concluded that the plaintiff failed to satisfy the requirements of Article III standing in a case where a disabled claimant, like the one here, brought an ADA claim against a

---

[40] Friends of the Earth, 528 U.S. at 181.

[41] Bochese, 405 F.3d at 975-76 (internal quotation marks omitted).

[42] Id. at 976 (alteration in original) (quoting Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n, 226 F.3d 1226, 1229-30 (11th Cir. 2000)).

[43] 331 F. Supp. 2d 1368 (M.D. Fla. 2004).

10

hotel. The Court there relied on the following factors in reaching its decision: (1) the plaintiff lived more than 280 (two-hundred and eighty) miles from the hotel and only traveled to the general area of the hotel twice a year; (2) the plaintiff lacked a continuing connection to the hotel; and (3) there were countless hotels closer to Disney World, which was at odds with Plaintiff's claim that he stayed at the hotel because of its proximity to Disney World.[44] Additionally, the *Tiger Partner* court rejected as a basis for standing the alleged discrimination Plaintiff experienced subsequent to the filing of the complaint because such claims were immaterial to the question of standing.[45]

The court in *Tiger Partner* relied on the district court decision in *Rosenkrantz v. Markopolous*,[46] which this Court also finds persuasive on the question of standing. In *Rosenkrantz*, the court found that the plaintiff lacked standing because he lived hundreds of miles away from Defendant's hotel and traveled to the area of the hotel only irregularly, occasionally, and infrequently.[47] The fact that the plaintiff's sister lived 20 (twenty) miles from the hotel did not show the existence of a credible threat of future injury, because there were numerous other hotels closer to her house.[48] Additionally, the plaintiff's plans to return were merely "some day" intentions, while he lacked any concrete or definite plans to return.[49]

---

[44] Tiger Partner, 331 F. Supp. 2d at 1373.

[45] Id.

[46] 254 F. Supp. 2d 1250 (M.D. Fla. 2003).

[47] Rosenkrantz, 254 F. Supp. 2d at 1253.

[48] Id.

[49] Id.

Like the plaintiffs in *Tiger Partner* and *Rosenkrantz*, Mr. Esposito has failed to show that he will be subjected to a credible threat of future injury.  Mr. Esposito lives in Broward County, Florida, about a five hour drive from the Howard Johnson in Ocala.  He has no continuing connection to the Howard Johnson or the greater Ocala area.  Mr. Esposito's two stated reasons for traveling to Ocala - to see if he could get on the boats at Silver Springs and to see an aunt in another county - do not show an intent to return in the future.[50]  After testing the boats at Silver Springs on his previous trip, Mr. Esposito expressed no interest, whatsoever, in returning to the park.  Even had Mr. Esposito expressed an intent to return to Silver Springs, the large number of hotels closer to the theme park evidences that any plans to return to Silver Springs is entirely disconnected to any possible return to the Howard Johnson, a hotel located west of Interstate 75 and not in close proximity to Silver Springs.

Moreover, Mr. Esposito's aunt, who was his sole relative in the area, has since passed away,[51] thus evidencing that he has no continuing familial connection to the greater Ocala area.  The great distance between Mr. Esposito's residence and the hotel, as well as his lack of any connection to the Ocala area, demonstrate that he has no real likelihood of suffering future injury at the hands of the Defendant.

Additionally, Mr. Esposito's general statement that he enjoys traveling does not evidence a specific intent to return to the Howard Johnson Hotel but rather represents nothing more than a purely speculative future injury, far less than the real and

---

[50] Doc. 26, pg. 21-22.

[51] Id. at 76, 95.

immediate threat necessary to pass constitutional muster. Indeed, in order to attempt to satisfy the constitutional standing requirement of Article III, Mr. Esposito has stated that he intends to return in the future to the approximate one-hundred hotels that he has sued. While this may be so, the Court concurs with the observation of the district court in *Tiger Partner*,[52] that such a contention is simply implausible and in any event is insufficient to evidence the required threat of future injury to establish standing.

The evidence of record makes clear that Mr. Esposito lacks any continuing connection to the Howard Johnson, as well as any real intent to return there in the future. Thus, he is under no real and immediate threat of future injury. Accordingly, Mr. Esposito has failed to establish that he has Article III standing to bring this claim.

In addition to Plaintiff's failure to establish standing under Article III because of the lack of evidence of a threat of future injury to him, Mr. Esposito also has failed to establish his standing because the claim has been brought to benefit others and not for his personal benefit. Because Mr. Esposito does not stand to personally profit from bringing this suit, he lacks Article III standing.[53] Throughout the vast majority of the testimony given at his deposition, Mr. Esposito made clear that he intended to benefit others by bringing this suit, with little concern for his own benefit or profit.[54] In the absence of a showing that Mr. Esposito brought this suit to personally benefit from a successful outcome he lacks Article III standing to maintain this case.

---

[52] Tiger Partner, 331 F. Supp. 2d at 1375.

[53] See Simon, 426 U.S. at 39.

[54] See supra note 15.

A third reason that Mr. Esposito lacks standing is because his complaints about barriers that he encountered concern problems he allegedly experienced *after* the complaint in this case was filed and because his complaints relate to barriers for people with other disabilities, and not barriers related to his own disability.[55] The Howard Johnson has three disabled guest rooms, numbers 308, 309, and 310, but Mr. Esposito did not inspect or use any of these rooms prior to the filing of his complaint.[56] Thus, he cannot have been aware of ADA violations, assuming they exist, in one of the rooms for disabled guests because he had not seen or been inside one. As such, Mr. Esposito lacks standing to bring any claims relating to the interior of the guest rooms for disabled guests, including the complaints he makes regarding the bathroom in the disabled rooms.

Moreover, many of Mr. Esposito's claims involve barriers that concern individuals with other disabilities. For instance, he claims that the handicap spaces in the parking lot do not have sufficient access aisles. However, he also admits that the aisle was sufficient for him to open a car door and get out into his wheelchair.[57] Accordingly, with regard to such claims, Mr. Esposito lacks standing to bring any claims involving barriers that do not affect someone with his same disabilities.[58]

---

[55] See Brother v. CPL Investments, Inc., 317 F. Supp. 2d 1358, 1368 (S.D. Fla. 2004) ("Plaintiffs do not have standing to complain about alleged barriers which are not related to their respective disabilities. Plaintiffs do not have standing to complain about alleged barriers which they were unaware of at the filing of their complaint.") (internal citations omitted).

[56] See supra note 23.

[57] Doc. 26, pg. 64.

[58] These barriers include alleged barriers to those with hearing disabilities, such as the use of the hotel's telephones, as Mr. Esposito is not hard of hearing, (Doc. 26, pg. 64-65, 77) and alleged barriers to
(continued...)

The corporate Plaintiff, Access, claims standing in this suit on behalf of its members, notably Mr. Esposito. Because Mr. Esposito does not have standing to bring this case, then, necessarily, neither does Access. For an association to have standing to sue it first must show that its members would have standing to sue in their own right. The Court has concluded that Mr. Esposito lacks standing, and Access has not presented evidence of any other members who might possibly have standing to bring suit. As such, Access also lacks standing to bring the claims in this case. Accordingly, it follows that because both Mr. Esposito and Access lack constitutional standing to bring this suit, summary judgment is due to be granted in favor of the Defendant.

### *C. Plaintiffs Have Not Presented Sufficient Evidence to Support The ADA Claims*

Alternatively, even if Plaintiffs had standing to bring this action, Defendant would be entitled to summary judgment because Plaintiffs have failed to present evidence - in the form of affidavits or otherwise - of a material fact issue to be tried in this case.

As discussed above, although the party filing a motion for summary judgment bears the initial burden of showing the non-existence of a triable issue of fact, once that initial burden has been met, the opposing party must present evidence of every element of their case. Further, the opposing party cannot merely point to the pleadings in support of their claim but, instead, must present admissible evidence, in the form of affidavits, depositions, or otherwise.[59]

---

[58](...continued)
those with difficulties opening doors, as Mr. Esposito has no disability affecting the opening of doors. (Doc. 26, pg. 77.)

[59] See Celotex, 477 U.S. at 324.

In the instant case, Defendant has filed sworn affidavits and a deposition as evidence in support of its arguments. The evidence presented by Defendant establishes that Mr. Esposito did not experience any discrimination in the form of architectural barriers at the Howard Johnson prior to filing his complaint, which is an essential element of Plaintiffs' claim for injunctive relief.[60]

Mr. Esposito's deposition with supporting exhibits (Doc. 26), discloses that Mr. Esposito did not experience any of the alleged barriers during his visit to the Howard Johnson prior to filing his complaint and that the barriers he identified were primarily architectural features that he believed may be barriers to other people with different disabilities.[61] Additionally, the five sworn affidavits from hotel employees (Docs. 29-33), filed by Defendant, taken together, show that Mr. Esposito did not visit any of the three handicap accessible guest rooms, nor did he ask to stay in one, during his visit to the hotel before suit was filed.[62] Additionally, despite offers and inquiries from hotel staff members, Mr. Esposito stated at the time of his visit that he needed no assistance and that there was no problem with his stay at the hotel.[63]

---

[60] The relevant portion of the ADA, under which Plaintiffs bring their claims, reads, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a). Discrimination under the ADA includes "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . ., where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv).

[61] See Doc. 26, pg. 36-37, 49, 63-65, 96,100.

[62] See Doc. 30, pg. 2; Doc. 31, pg. 1; Doc. 29, pg. 2.

[63] See Doc. 30, pg. 3-4; Doc. 31, pg. 2-3; Doc. 29, pg. 2-3.

16

Because Defendant has met its initial burden by presenting evidence showing that there is no issue of fact as to whether Mr. Esposito experienced any discrimination at the Howard Johnson, in order to survive the Motion for Summary Judgment, Plaintiffs are required to present evidence, in the form of affidavits, depositions, answers to interrogatories, or other admissible evidence, showing that there is a disputed issue of fact as to whether Mr. Esposito experienced discrimination, specifically in the form of Defendant's failure to remove architectural barriers. Plaintiffs have not met that burden in this case.

The only evidence filed by Plaintiffs in response to the Motion for Summary Judgment were portions of Mr. Esposito's deposition, the entirety of which had previously been filed by Defendant, and "affidavits" from three proposed expert witnesses. The purpose of selectively re-filing the portions of Mr. Esposito's deposition seems to have been to point out possible inconsistencies within his own testimony. However, this provides insufficient evidence to establish the elements of Plaintiffs case. After reviewing the deposition as a whole the Court concludes that, although Mr. Esposito identified various alleged barriers earlier in his testimony, he later admitted under oath that the barriers either had no effect on him personally, only on others, or that he was not affected by the barriers until after the filing of the complaint, when he returned to the Howard Johnson for his deposition. Barriers that Plaintiff admitted had no effect on him included the width of the parking lot access aisles for vans[64] and the

---

[64] Doc. 26, pg. 53, 64.

height of the front desk counter.[65]  Barriers that only affected Plaintiff at the time of his return trip for his deposition include the steepness of the slope in the parking lot[66] and the use of the handicap guest bedroom and bathroom.[67]

None of the three "affidavits" filed by Plaintiffs provide evidence, either individually or collectively, that would serve to establish the essential elements of Plaintiffs' claim.[68]

The document created by Gene C. Mattera (Doc. 38, Ex. 2) does not provide any evidence of the elements of Plaintiffs' case.  Although titled "Affidavit of Gene C. Mattera," the document is both unsworn and unsigned.[69]  Thus, it is of no evidentiary value to the Court, as the hearsay testimony therein lacks any indicia of reliability. Additionally, Mr. Mattera's document has no relevance to the facts of this case because it describes the conditions of The Wildwood Inn Hotel, and mentions nothing of the Howard Johnson that is at issue in this case.[70]

---

[65] Id. at 42.

[66] Id. at 65-66.

[67] Id. at 99-100.

[68] As previously discussed the only report of an expert that relates to the hotel in this case is the report of Kenneth B. Wynn (Doc. 38, Ex. 3), which has been stricken because Plaintiffs failed to disclose the report as required by the Court's scheduling order and as required by the Federal Rules of Civil Procedure.

[69] See F.R.E. 603 ("Oath or Affirmation").  The "affidavit" of Kenneth Wynn, which has been stricken, also suffers from the evidentiary defect of being unsworn and would, therefore, be of no evidentiary value to the Court even had it not been stricken.

[70] Although, attached as Exhibit 4 to Mr. Esposito's deposition (Doc. 26), is a nearly identical document, titled "Affidavit of Gene Mattera," this "Affidavit of Gene Mattera" is defective for the same reasons as the one submitted by Plaintiffs, in that it is both unsworn and unsigned. Pursuant to Rule 56(e) the Court is only permitted to consider evidence that "would be admissible in evidence." Unsworn testimony cannot be considered by the Court on summary judgment or at trial.

The final "affidavit" of record is a letter from Don A. Halperin to Navroz F. Saju, one of the operators of the Howard Johnson. In the letter, Mr. Halperin characterizes Mr. Esposito's complaint as "without merit" and bordering on "fraudulent." It goes without saying that this letter is equally unhelpful in providing evidence that would establish the elements of Plaintiffs' case.

In sum, Plaintiffs have failed to submit any admissible evidence establishing the elements of the ADA claims asserted in this case and have failed to show the existence of a genuine issue of material fact. Accordingly, the Court concludes that, even if the Plaintiffs had established standing to bring this suit, summary judgment for the Defendant would still be due to be granted.

### III. <u>CONCLUSION</u>

Accordingly, upon due consideration, it is ordered that:

(1) the Defendant's Motion for Summary Judgment Against Access 4 All, Inc. and Felix Esposito is hereby **GRANTED** as to all of Plaintiff's claims;

(2) the Defendant's Motion to Strike and/or Exclude Plaintiff's Expert Witness Report of Kenneth B. Wynn (Doc. 39) is hereby **GRANTED**; and

(3) the Clerk is directed to enter judgment in favor of the Defendant, terminate any pending motions, and close the file in this matter.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on May 20, 2005.

GARY R. JONES
United States Magistrate Judge

Copies to:
    All Counsel